**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| LATISHA CASTLE, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 2:24-cv-515 |
| | : |
| EQUIFAX INFORMATION SERVICES, LLC, | : |
| | : |
| Defendant. | : |

**COMPLAINT**

Plaintiff Latisha Castle, by counsel, brings the following complaint against Defendant Equifax Information Services, LLC ("Equifax"):

**PRELIMINARY STATEMENT**

1. This is an action for statutory, actual, and punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681, *et seq.* (the Fair Credit Reporting Act or "FCRA").

2. Before the FCRA's enactment, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). Congress, therefore, enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

3. To accomplish Congress's goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b), which is one of the FCRA's cornerstone provisions.

4. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires it to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This

section imposes a high, and often disregarded, standard on credit reporting agencies. *See, e.g., Burke v. Equifax Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that " 'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting Webster's Third New International Dictionary 133, 1396, 1771 (1993)).

5. In this case, when Plaintiff applied for credit, including several mortgages, Equifax reported that she was deceased, when in fact, she was very much alive and well.

6. Equifax included this information in Plaintiff's credit files without any meaningful procedures in place to prevent this inaccuracy, even though it knew that she was alive, including because her creditors indicated she was still paying her bills.

7. Accordingly, Plaintiff alleges claims against Equifax under the FCRA, 15 U.S.C. § 1681e(b) for failing to reasonably ensure the maximum possible accuracy of her credit reports.

## JURISDICTION

8. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

## PARTIES

9. Plaintiff is a natural person residing in Norfolk, Virginia, and is a "consumer" as defined by 15 U.S.C. §1681a(c).

10. Equifax is a foreign limited liability company authorized to do business in Virginia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

11. Plaintiff is a single mother who wanted to purchase a new home for herself and son.

12. Over the past three years, Plaintiff has been denied credit, including several attempts to obtain a mortgage.

13. Unbeknownst to her at first, Plaintiff's applications were denied because Equifax was reporting her as deceased.

14. Upon information and belief, Equifax reported a Wells Fargo credit card account in Plaintiff's credit file with an Equal Credit Opportunity Act ("ECOA") code of "X," indicating that Plaintiff was "deceased."

15. In other words, Equifax reported Plaintiff as deceased because one creditor represented the same unverified information to Equifax.

16. As a consequence, Plaintiff was not given an Equifax credit score.

17. Once a "deceased" notation is placed upon a consumer's report, Equifax will not calculate a credit score for that consumer. Rather, Equifax will report that the consumer's credit score is "N/A."

18. Equifax reported Plaintiff as deceased and without a credit score even though other activity on Plaintiff's credit file indicated that she was, in fact, alive.

19. Such evidence included ongoing and continuous payments that were being made on open and active credit accounts.

20. Equifax's reporting was false because Plaintiff was—and is—alive.

21. Because of the false reporting, Plaintiff has been continuously denied credit, including when she applied for a mortgage in August and September 2022.

22. At all times relevant to the Complaint, Equifax knew that third party credit issuers require a credit score to process credit applications.

23. Despite that knowledge, Equifax made no material changes to its reporting.

24. Equifax's inaccurate reporting of Plaintiff as deceased caused her significant actual damages, including a mortgage denial, a reduced credit score, reputational damage, embarrassment, and humiliation.

25. Equifax's conduct also caused Plaintiff to suffer significant emotional distress as she needed the home for herself and her son.

### *The Defendant's Willful Misconduct*

26. Equifax have substantial notice and knowledge of the failure of its business procedures and systems to prevent living consumers from being inaccurately reported as deceased.

27. Upon information and belief, as described above, Equifax also does not conduct any independent verification with any source that a consumer is actually deceased before adding a deceased notation to the consumer's credit file.

28. For example, upon information and belief, Equifax regularly receive the "Death Master File" from the Social Security Administration listing all of the consumers that the United States government believes to be deceased, organized by social security number. However, Equifax does not cross-reference the "X" code they receive from their data furnishers with the Death Master File in order to determine if the deceased notation that they are reporting is in fact accurate.

29. In addition, upon information and belief, Equifax also fails to consider other conflicting information in a consumer's file—like the opening of new accounts, payments made

4

on currently open accounts, or the failure of other data furnishers to report the consumer as deceased—before marking a consumer as deceased.

30. Instead, Equifax maintains no procedures whatsoever to determine the accuracy of the deceased notation that it receives from their data furnishers.

31. In fact, the CFPB has also recently issued an interpretation making clear that a CRA violates its duty under § 1681e(b) when it reports

> Information about consumer accounts that is plainly inconsistent with other reported information, such that one piece of information must be inaccurate – for example, if every other tradeline is reporting ongoing payment activity, while one tradeline contains a "deceased" indicator, reasonable policies and procedures should identify the inconsistency and the consumer reporting agency should prevent the inclusion of the inaccurate information in consumer reports it generates.

32. CFPB Advisory Opinion on Fair Credit Reporting; Facially False Data,[1] at 9, October 20, 2022, __ Fed. Reg. __, *citing Gohman v. Equifax Information Services, LLC*, 395 F. Supp. 2d 822, 827 (D. Minn. 2005) *and Sheffer*, 2003 WL 21710573, at *2 (referencing the fact that only one account of approximately two dozen on a consumer's report included the "deceased" notation as one of two "inconsistencies" that "provide[d] a basis from which a jury could infer that the procedures were unreasonable").

33. This conduct causes consumers to suffer significant damages because when a consumer is marked as deceased, it is reported to any potential creditor and triggers a "zero" credit score, most often rendering a consumer unable to obtain any new credit.

34. Equifax (and its competitors, Experian and Trans Union) have been repeatedly sued for inaccurately reporting a living consumer as deceased. *Sheldon v. Equifax Info. Sols.,*

---

[1] Available at https://files.consumerfinance.gov/f/documents/cfpb_fair-credit-reporting-facially-false-data_advisory-opinion_2022-10.pdf. Nor is this interpretation new. Rather, it is "consistent with prior [2011] Federal Trade Commission" interpretations. *Id.* at 10 n. 27.

*Inc.*, No. CIV.A. 08-5193, 2010 WL 3768362 (E.D. Pa. Sept. 28, 2010); *Aslani v. Corelogic Credco, LLC*, No. 1:13-cv-2635-CC-LTW, 2014 WL 12861199, at *1 (N.D. Ga. Aug. 18, 2014), *report and recommendation adopted,* No. 1:13-cv-2635-CC-LTW, 2014 WL 12861361 (N.D. Ga. Sept. 8, 2014); *Sheffer v. Equifax Info. Sols., Inc.*, No. CIV.A. 02-7407, 2003 WL 21710573, at *2 (E.D. Pa. July 24, 2003); *Oxfurth v. Equifax Info. Sols., Inc.*, 1:14-cv-123 (E.D. Va.); *Boris v. Experian Info. Sols., Inc.*, 7:16-cv-206 (W.D. Va.); *Pang v. Credit Plus, Inc.*, 1:20-cv-122 (D. Md.).

35. Despite these lawsuits, Equifax has not significantly modified its procedures to assure that the credit reports it prepares, publishes, and maintains are as accurate as possible, as required by § 1681e(b) of the FCRA.

36. Their FCRA violations, therefore, were willful.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

37. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

38. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

39. On numerous occasions, Equifax prepared a patently false consumer report concerning Plaintiff.

40. Despite actual and implied knowledge that Plaintiff is not dead, Equifax readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

41.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintains concerning Plaintiff.

42.     As a result of this alleged conduct, action, and inaction, Plaintiff suffered actual damages, including but not limited to credit denials, damage to her credit rating, lost opportunities to enter into consumer credit transactions, and emotional distress, including aggravation, inconvenience, embarrassment, and frustration.

43.     Equifax's conduct, actions, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court under 15 U.S.C. § 1681n. In the alternative, Equifax's conduct, actions, and inaction was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

44.     Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorney's fees from Equifax in an amount to be determined by the Court under 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

45.     Plaintiff is entitled to recover attorneys' fees and costs from Equifax in an amount to be determined by the Court under 15 U.S.C. § 1681n and/or § 1681o.

WHEREFORE, Plaintiff demands judgment for compensatory, statutory, and punitive damages against Equifax; for her attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**LASTISHA CASTLE**

By: _/s/ Kristi C. Kelly_
Kristi C. Kelly, VSB #72791

                              Andrew J. Guzzo, VSB #82170
                              Casey S. Nash, VSB #84261
                              KELLY GUZZO, PLC
                              3925 Chain Bridge, Suite 202
                              Fairfax, VA  22030
                              Telephone: (703) 424-7572
                              Facsimile: (703) 591-0167
                              Email:  kkelly@kellyguzzo.com
                              Email:  aguzzo@kellyguzzo.com
                              Email:  casey@kellyguzzo.com
                              *Counsel for Plaintiff*